# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND-*Northern Division*

KAREEM BROWN
1807 N. Collington Ave.
Baltimore, MD 21213

        Plaintiff,

    v.

STATE OF MARYLAND
S/o: Dereck E. Davis, State Treasurer
80 Calvert Street Annapolis, Maryland 21401

and

CAROLYN SCRUGGS
*Secretary*, *Department of Public Safety and
Correctional Services (DPSCS)*
Suite 100
Towson, MD 21286

and

WARDEN TYRELL WILSON
In his Individual and his Official Capacity as Warden
Maryland Reception Diagnostic and Classification
Center (MRDCC)
550 East Madison Street
Baltimore, Maryland 21202

and

ANGELINA BURRELL BOYD, ASSISTANT
WARDEN
In her Individual and Official Capacity as Assistant
Warden
Maryland Reception Diagnostic and Classification
Center (MRDCC)
550 East Madison Street
Baltimore, Maryland 21202

Case No. _____
* Jury Trial Demanded*

1

and

OFFICER YEVONICIA BOYD
In her Individual and Official Capacity as Chief of
Security
Maryland Reception Diagnostic and Classification
Center (MRDCC)
550 East Madison Street
Baltimore, Maryland 21202

and

OFFICER JOHN DOE
In his Individual and Official Capacity as a
Correctional Officer
Maryland Reception Diagnostic and Classification
Center (MRDCC)
550 East Madison Street
Baltimore, Maryland 21202

Defendants

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff Kareem Brown, by and through undersigned counsel, Elizabeth
Connell, Esq. and Connell Counsel, LLC and sues Defendants State of Maryland, Carolyn
Scruggs, Secretary of the Department of Public Safety and Correctional Services (DPSCS) Warden
Tyrell Wilson, Assistant Warden Angela Burrell Boyd, Officer Yevonicia Boyd, and Officer John
Doe and as cause therefore states the following:

## INTRODUCTION

1. Plaintiff Kareem Brown (hereinafter "Mr. Brown") brings this action because of the
preventable assault of Mr. Brown. At the same time, he was a pretrial detainee in the custody of
the Department of Public Safety and Correctional Services (hereinafter "DPSCS") at the Maryland
Reception Diagnostic and Classification Center (hereinafter "MRDCC").

2

2. While on pretrial detention at the MRDCC facility, other inmates attacked and stabbed Mr. Brown with a makeshift weapon in his left eye, rendering Mr. Brown blind in one (1) eye, permanently disfigured, and disabled.

3. Defendants knew that MRDCC was dangerous and understaffed. Just four (4) months before Mr. Brown's stabbing, another inmate at MRDCC suffered multiple stabbings by other inmates in the facility using makeshift weapons and died as a result.

4. Defendants' deliberate indifference, unreasonableness, and negligence or gross negligence caused the injuries to Mr. Brown.

### JURISDICTION AND VENUE

5. Jurisdiction is proper in this Honorable Court under 28 U.S.C. Code § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States. Mr. Brown further invokes supplemental jurisdiction of this Court to hear and decide claims arising under state law, under 28 U.S.C. § 1367.

6. Venue is proper in this Honorable Court under 28 U.S.C. §1391 because the parties are domiciled in Maryland or organized under Maryland Law, and the events at issue occurred in Baltimore City, Maryland.

7. Defendants had actual or constructive notice of the assault of Mr. Brown and the circumstances giving rise to Mr. Brown's injuries and permanent blindness under § 5-304(e) of the Local Government Tort Claims Act and §12-101 et seq. of the Maryland Tort Claims Act, and Plaintiff is in full compliance with said Acts insofar as they apply to the instant case. All conditions have been fully satisfied as a precedent for filing a suit.

### PARTIES

8. Plaintiff Kareem Brown is and was at all times relevant to the occurrence complained

of herein, an adult United States citizen and a Baltimore City, Maryland resident.

9. Defendant State of Maryland is a sovereign governmental entity responsible for operating and overseeing correctional facilities within its jurisdiction. The State of Maryland is named a substitute party defendant as required by Maryland Annotated Code, State Government Article Section 12-101 et seq.

10. Defendant Carolyn Scruggs (hereinafter "Defendant Scruggs") is an adult citizen of the United States and currently serves as Secretary of the Department of  Public Safety and Correctional Services, who stands in the shoes of all of her predecessors in this case, whose conduct referred to herein was at all times relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times pertinent hereto acting under color of state law. Defendant Scruggs had the capacity and authority to hire, fire, and supervise final policymakers, including all individually named Defendants herein, as MRDCC is under the management, supervision, and control of DSPCS.

11. Upon information and belief, Defendant Tyrell Wilson (hereinafter "Defendant Wilson") is an adult citizen of the United States and at all times relevant hereto was the Warden for MRDCC whose conduct referred to herein was at all times relevant to his employment and is responsible for the implementation of MRDCC's policies and procedures, management, supervision of staff (to include requesting additional staff) as well as the welfare of inmates, including Plaintiff.

12. Upon information and belief, Assistant Warden Angelina Burrell Boyd (hereinafter "Defendant Burrell Boyd") is an adult citizen of the United States and at all times relevant hereto was the Assistant Warden for MRDCC and is responsible for but not limited to the following:

a.  Overseeing the management of program and operational services such as security operations, correctional classification, social work, recreation, psychology, religious services, maintenance, food services, and others for the inmate population;

b.  Overseeing the management and supervision of institutional personnel;

c.  Developing policies and procedures to improve operations in MRDCC;

d.  Reviewing recommendations made by correctional classification personnel to approve or disapprove changes in security operations, job assignments, program participation, and disciplinary action;

e.  Coordinating the work release program and developing policies to ensure effectiveness in the release and return of inmates;

f.  Handling problems and complaints from supervisory and managerial personnel;

g.  Administering grievance decisions and employee discipline in accordance with Division of Correction and Department of Personnel rules and regulations;

h.  Reviewing correspondence directed to the institution and responding appropriately;

i.  Attending task force meetings and committees in order to supply or collect information and to discuss problems and issues affecting the institution;

j.  Ensuring that the institution complies with all regulations of the Maryland Commission on Correctional Standards;

k. Serving in the capacity of Warden, when necessary;

13. Upon information and belief, Officer Yevonicia Boyd (hereinafter "Defendant Y. Boyd") is an adult citizen of the United States and at all times hereto was the Chief of Security at MRDCC whose responsibilities include but are not limited to:

a. Supervising uniformed correctional staff as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements.

b. Maintaining the custody of inmates and the security of the institution as measured by a review of compliance audit reports, serious incident reports, and other documents reflecting the overall soundness of institutional security.

c. Making recommendations concerning security enhancements, expenditures as measured by a budget review, and modifications made to meet immediate and long-term security needs.

d. Ensuring that investigations are completed appropriately and in a timely manner,

e. Reviewing all use of force incidents and making recommendations.

f. Creating and ensuring that emergency plans are clear, concise, and current.

g. Reviewing and making recommendations concerning institutional post orders, policies, and procedures.

h. Managing and making recommendations to the Warden concerning staffing and overtime.

i. Planning and scheduling post assignments as measured by a review of post orders, staffing and overtime.

j. Carrying out the duties of the Warden/Assistant Warden in his/her absence as measured by a review of the institution's continuity in functioning during their period of absence.

14. Officer John Doe (hereinafter "Defendant Doe") is a correctional officer who was at all times relevant to the actions and omissions described herein, employed by the Department of Public Safety and Correctional Services and was working the unit at the MRDCC facility during the time inmates assaulted Mr. Brown and stabbed him in the eye. Officer Doe was responsible for implementing MRDCC's policies and procedures and overseeing the safety and well-being of inmates, including Mr. Brown. Mr. Brown requested the identity of Officer John Doe from DPSCS and MRDCC, but by mistake, Mr. Brown was provided with the wrong officers' names. Mr. Brown will substitute the actual name of Officer Doe when he can fully ascertain his identity through discovery.

15. All Defendants are jointly and severally liable for damages and injuries to the The Plaintiff described herein.

## FACTS

16. On or around August 27, 2021, Mr. Brown was arrested based on an allegation of First Degree Rape, amongst other charges, which were ultimately placed on the Stet Docket and resulted in Mr. Brown being released from custody on July 6, 2022.

17. After his arrest, Mr. Brown was held pretrial at the Central Booking Intake Facility (hereinafter referred to as "CBIF") in Baltimore City.

18. Based on information and belief, Mr. Brown was transferred to different housing units, including the gym area, because CBIF was overcrowded.

19. Based on information and belief, Mr. Brown moved to 5 North, which consisted of an open dorm area with no individual cells.

20. Based on information and belief, while Mr. Brown was in 5 North, other inmates discovered his charges, and approximately six (6) to eight (8) inmates tried to steal Mr. Brown's paperwork and assault him.

21. An older, unknown inmate intervened, spread the involved inmates apart, and informed Mr. Brown that the other inmates knew what Mr. Brown was detained for and that Mr. Brown did not belong in their unit.

22. As a result of the incident, CBIF staff transferred Mr. Brown to another holding cell by himself for his safety.

23. Based on information and belief, Mr. Brown spent about three (3) days in the holding cell by himself before being told that he would be transferred to MRDCC.

24. Mr. Brown did not want to transfer to MRDCC due to safety concerns, and he repeatedly told staff that he would prefer to remain alone at CBIF.

25. On or about September 9, 2021, Mr. Brown was transferred to MRDCC; however, prior to his move, he requested to be housed by himself because he was fearful of being attacked like he was previously on 5 North at CBIF due to the nature of his charges. Mr. Brown also believed that MRDCC was a dangerous facility.

26. In 2015, former Maryland Governor Larry Hogan announced the immediate closing of the Baltimore City Detention Center (hereinafter referred to as "BCDC"), which was responsible for housing pretrial detainees in Baltimore City. As a result, inmates were housed in other facilities, including MRDCC.

27. MRDCC is one of the largest correctional facilities in the country. It is a state-run prison that houses inmates who have committed a variety of offenses and are waiting to be assigned to a specific facility. Varying levels of custody are held, including medium, maximum, and pretrial inmates. Thus, MRDCC houses convicted inmates as well as pretrial detainees. According to DPSCS, there was an increase in assaults when MRDCC took on pretrial detainees.

28. On August 27, 2021, inmates within MRDCC attacked and killed another inmate. Only one (1) correctional officer monitored the inmates then.

29. Based on information and belief, by the time Mr. Brown was transferred to MRDCC on September 9, 2021, the facility was in lockdown due to the dangerous situation.

30. Mr. Brown's mother, Angela Johnson, also feared for her son's safety and contacted employees at MRDCC to see if Mr. Brown could be placed in protective custody due to his charges and the prior attack against him, but to no avail.

31. When Mr. Brown first got to MRDCC, inmates could only leave their cell for thirty (30) minutes, and this would occur one (1) cell at a time. Each cell usually had two (2) inmates.

32. Based on information and belief, between October and November 2021, Mr. Brown was attacked by his cellmate, and eventually, he was moved to Unit 4A. Once again, Mr. Brown asked to be housed by himself but was told that MRDCC could not keep him separated unless he were in trouble as punishment.

33. Based on information and belief, Mr. Brown kept saying that he was in trouble due to the nature of his charges, but his complaints were ignored. Mr. Brown asked to file an inmate grievance form, but MRDCC employees would not provide him with the form.

34. Based on information and belief, towards the end of November to December, MRDCC's policy changed to allow four (4) inmates at a time from (2) cells to go out.

35. Based on information and belief, on or around January 8, 2022, between 1:00-3:00 pm, Defendant Doe let out Mr. Brown, his cellmate, and two (2) inmates in the cell next door to Mr. Brown for recreation. During recreation, inmates remain in their tier and can take a shower, make food, watch television, or make calls for about an hour. While they were out, Defendant Doe received a call informing him that it was time for visitation.

36. Based on information and belief, instead of following policy and only allowing four (4) inmates out at a time, Defendant Doe opened another three (3) to four (4) cells, allowing ten (10) to twelve (12) inmates out in the tier with only one (1) correctional officer to supervise.

37. While Mr. Brown was on the phone, he heard someone calling out his name. He turned around and walked towards the inmate, calling for him. (The unit is set up so that there is an upper and lower level). Mr. Brown and the other inmate were at the lower level.

38. When Mr. Brown approached, the inmate told Mr. Brown that he knew about Mr. Brown's charges. Mr. Brown told the inmate to leave him alone, but another inmate came up behind Brown and assaulted him. As Mr. Brown tried to defend himself, the other inmate who had initially called Mr. Brown over stabbed Mr. Brown in the left eye with a makeshift weapon.

39. Based on belief and information, during this assault, Defendant Doe was not present, deliberately paid no heed, and did nothing to intervene or call for assistance.

40. Mr. Brown called out to Defendant Doe that his eye was bleeding, but instead of immediately rendering aid to Mr. Brown, Defendant Doe placed Mr. Brown back in his cell. Mr. Brown had to wait in his cell for at least twenty (20) minutes before Defendant Doe provided him with a pass to go to the medical unit.

41. When Mr. Brown arrived at the medical unit, they transported him to the University of Maryland Hospital, where he underwent surgery and remained in the hospital for a few days.

42. Based on information and belief, prior to this incident, there had not been any recent inspections of the cells to determine whether inmates possessed contraband, such as the weapon used by the other inmate to stab Mr. Brown in the eye.

43. When Mr. Brown returned from the hospital, he was initially returned to the general population and had a cellmate. However, he was attacked once more by his cellmate after his cellmate found out what Mr. Brown's charges were.

44. After this attack, Mr. Brown was placed in protective custody by himself until he was later released from custody on July 6, 2022.

45. At all relevant times, Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, Y. Boyd, and Doe knew of the following dangers:

  a.  MRDCC was overcrowded;

  b.  MRDCC was understaffed;

  c.  MRDCC contained a mix of pretrial detainees and convicted inmates, which led to an increase in inmate assaults, making it a dangerous facility;

  d.  MRDCC inmates had makeshift weapons and used them;

  e.  There was a recent attack on an MRDCC inmate by other inmates using makeshift  weapons, resulting in his death;

  f.  Inmates charged with or convicted of sex offenses are at risk of being assaulted or harmed;

  g.  Mr. Brown was already assaulted due to the nature of his charges while detained;

  h.  Mr. Brown and his mother, Ms. Johnson, expressed fear for his safety and requested that he be housed by himself in protective custody;

46. At all relevant times, Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, Y. Boyd, and Doe had a duty to maintain, provide, and manage the safety and well-being of inmates within MRDCC.

47. At all relevant times, Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, Y. Boyd and Doe had a duty to maintain, provide, and manage the safety and well-being of Mr. Brown.

48. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd knowingly and intentionally violated Mr. Brown's Constitutional rights, the standard practices and standards set for adult correctional facilities and allowed a pattern of conduct to continue including but not limited to:

  a. Failing to maintain proper correctional officer-to-inmate ratios;

  b. Failing to adequately staff the unit in which inmates were housed, including Mr. Brown;

  c. Failing to provide sufficient, trained, and qualified personnel to monitor, supervise, control, and protect inmates;

  d. Failing to develop and implement policies and procedures regarding the mixed housing of pretrial detainees with convicted inmates;

  e. Failing to prevent inmates from making, obtaining, storing, and using makeshift weaponry;

  f. Failing to develop and implement policies and procedures regarding housing of inmates charged or convicted with sex offenses;

    g.  Failing to separate Mr. Brown from other inmates or place him in protective custody after he suffered prior attacks and he and his mother expressed fear for his safety;

49. Defendant Doe oversaw the safety and well-being of the inmates on his tier, including Mr. Brown. Defendant Doe knowingly and intentionally violated Mr. Brown's Constitutional rights by failing to adhere to standards and policies set forth by MRDCC when he released more inmates from their cells than allowed and failing to keep watch, supervise, manage, and control inmates released from their cells.

50. Defendant Doe showed callous disregard and deliberate indifference for the safety and well-being of Mr. Brown and violated his Constitutional rights by either not being present during the attack, paying no heed to the attack, failing to intervene or seek assistance from other officers during the attack, and/or failing to render immediate aid after the attack contrary to standards and policies.

51. As a direct and proximate result of Defendants' breach of duties, inmates within Mr. Brown's unit physically assaulted Mr. Brown and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

52. At all relevant times, Defendants Scruggs, Wilson, Burrell Boyd, Y. Boyd, and Doe acted under the color of state law.

53. All the allegations herein, however worded, are pleaded alternatively as acts of negligence, gross negligence, intent, and/or malice, as determined at trial by the jury in this matter.

## COUNT I – 42 U.S.C. 1983
### (Against All Defendants)

54. Mr. Brown adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

55. Defendants engaged in an activity that violated Mr. Brown's rights as protected under the Constitution of the United States, including, but not limited to, Mr. Brown's rights to personal security and protection under the Fourth, Eighth, and Fourteenth Amendments.

56. Mr. Brown was at all times a pretrial detainee at MRDCC and CBIF and was, therefore, owed the protections of due process of law under the Fourteenth Amendment to the U.S. Constitution. Detainees and inmates are constitutionally entitled to detention in an environment that offers reasonable protection from harm. Under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, Defendants owed a duty of care to Mr. Brown to ensure his safety in the State of Maryland; institute and enforce policies that would maintain his well-being while in the custody of MRDCC; and adequately protect his safety and well-being. By the actions detailed herein, Defendants deprived Mr. Brown of his Constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, including, but not limited to:

    a.   freedom from the abuse of power by law enforcement and correctional officers

    b.   freedom from summary punishment

    c.   freedom from cruel and unusual punishment

    d.   freedom from prison officials' and employees' deliberate indifference and/or unreasonableness to the safety and well-being of inmates.

57. These rights were denied to Mr. Brown when Defendants knowingly failed to

adequately protect Mr. Brown while in their custody as the operators, agents, and employees of MRDCC, a Maryland Department of Corrections facility, and the Defendants' actions or inactions were made under the color of State and local law, therefore, triggering 42 U.S.C. Section 1983. But for their actions or failure to act Mr. Brown would not have been injured.

58. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd were responsible for the operation, control, safety, and security of MRDCC and the inmates housed therein. Part of their duties consisted of but are not limited to:

a. Overseeing the management of program and operational services such as security operations

b. Developing policies and procedures in order to improve operations in a correctional institution

c. Reviewing recommendations made by correctional classification personnel in order to approve or disapprove changes in security operations, job assignments, program participation, and disciplinary action

d. Ensuring that the institution is in compliance with all regulations of the Maryland Commission on Correctional Standards

e. Supervising uniformed correctional staff as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements

f. Maintaining the custody of inmates and the security of the institution as measured by a review of compliance audit reports, serious incident

reports, and other documents reflecting the overall soundness of institutional security

g.  Making recommendations concerning security enhancements, expenditures as measured by a review of the budget, and modifications made to meet immediate and long-term security needs

h.  Creating and ensuring that emergency plans are clear, concise, and current

i.  Reviewing and making recommendations concerning institutional post orders, policies, and procedures

j.  Managing and making recommendations to the Warden concerning staffing and overtime

k.  Planning and scheduling post assignments as measured by a review of post orders, staffing, and overtime

59. Defendant Doe had the duty to implement MRDCC's policies and procedures, as well as to oversee the safety and well-being of inmates, including Mr. Brown.

60. Defendants were deliberately indifferent and grossly negligent in respect of their non-delegable responsibility and obligation to protect Mr. Brown while he was in their care, control, and custody as an inmate at MRDCC.

61. Defendants knew of the substantial and excessive risk of serious harm to inmates, including Mr. Brown, due to understaffed units, inadequate officer-to-inmate rations, lack of sufficient, trained, and qualified personnel to monitor, supervise, control, and protect the inmates, a mixture of pretrial detainees with convicted inmates, assaults by other inmates with weapons made from objects, specifically makeshift weapons left accessible to inmates, and housing inmates

charged or convicted with sex offenses with other inmates in the general population.

62. The Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd knew the substantial and excessive risk of serious harm to Mr. Brown due to prior attacks on him as a result of other inmates finding out his charges, as well as pleas by Mr. Brown and his mother, Ms. Johnson, for him to be separated from the general population.

63. Defendant Doe knew the substantial risk of serious harm to Mr. Brown when he released more than the allowable number of inmates out of their cells (especially in light of recent assaults and killings at the MRDCC facility) and did not supervise the inmates when released.

64. Defendants breached their duties by failing to take adequate steps to alleviate the conditions, with willful and wanton negligence and disregard for Mr. Brown's safety, which actually, proximately, and foreseeably allowed the assailants to attack Mr. Brown, injuring him severely and failing thereafter to render aid timely.

65. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd also breached their duties by allowing a pattern of conduct to continue, including but not limited to:

    a.  Failing to maintain proper correctional officer-to-inmate ratios

    b.  Failing to adequately staff the unit in which inmates were housed, including Mr. Brown

    c.  Failing to provide sufficient, trained, and qualified personnel to monitor, supervise, control, and protect inmates

    d.  Failing to develop and implement policies and procedures regarding the mixed housing of pretrial detainees with convicted inmates

    e.  Failing to prevent inmates from making, obtaining, storing, and using makeshift weaponry

   f.  Failing to develop and implement policies and procedures regarding housing of inmates charged or convicted with sex offenses

   g.  Failing to separate Mr. Brown from other inmates or place him in protective custody after he suffered prior attacks and he and his mother expressed fear for his safety

66. Defendant Doe breached his duty by failing to adhere to standards and policies and promulgating a pattern of conduct problematic within MRDCC by releasing more inmates from their cells than allowed, failing to keep watch, manage, supervise, and control the inmates released from their cells, and by either not being present during the attack, paying no heed to the attack, failing to intervene or seek assistance from other officers during the attack, and/or failing to render immediate aid after the attack contrary to standards and policies.

67. As a direct and proximate result of Defendants' breach of duties, inmates within Mr. Brown's unit physically assaulted and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

WHEREFORE, Mr. Brown demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorney's fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

**COUNT II - MARYLAND DECLARATION OF RIGHTS, Articles 16, 19, 24, 25, and 26**
**(Against All Defendants)**

68. Mr. Brown adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

69. Defendants engaged in an activity that violated Mr. Brown's rights as protected under The Maryland Declaration of Rights, including, but not limited to, Mr. Brown's rights to personal security and protection under Articles 16, 19, 24, 25, and 26.

70. Mr. Brown was at all times a pretrial detainee at MRDCC and CBIF and was, therefore, owed the protections of due process of law under Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights. Detainees and inmates are constitutionally entitled to detention in an environment that offers reasonable protection from harm. Under the Articles 16, 19, 24, 25, and 26.

71. Defendants owed a duty of care to Mr. Brown to ensure his safety in the State of Maryland, institute and enforce policies that would maintain his well-being while in the custody of MRDCC, and adequately protect his safety and well-being. By the actions detailed herein, Defendants deprived Mr. Brown of his Constitutional rights under Articles 16, 19, 24, 25, and 26, including, but not limited to:

    a. freedom from the abuse of power by law enforcement and correctional officers

    b. freedom from summary punishment

    c. freedom from cruel and unusual punishment and

    d. freedom from prison officials' and employees' deliberate indifference and/or unreasonableness to the health and safety of inmates

72. These rights were denied to Mr. Brown when Defendants knowingly failed to adequately protect Mr. Brown while in their custody as the operators, agents, and employees of MRDCC, a Maryland Department of Corrections facility, and the Defendants' actions or inactions were made under the color of State and local law, therefore, triggering constitutional protections afforded by the Maryland Declaration of Rights. But for the Defendants' actions or failure to act Mr. Brown would not have been injured.

73. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd were responsible for the operation, control, safety, and security of MRDCC and the inmates housed therein. Part of their duties consisted of but are not limited to:

a. Overseeing the management of program and operational services such as security operations

b. Developing policies and procedures in order to improve operations in a correctional institution

c. Reviewing recommendations made by correctional classification personnel in order to approve or disapprove changes in security operations, job assignments, program participation, and disciplinary action

d. Ensuring that the institution is in compliance with all regulations of the Maryland Commission on Correctional Standards

e. Supervising uniformed correctional staff as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements

f.  Maintaining the custody of inmates and the security of the institution as measured by a review of compliance audit reports, serious incident reports, and other documents reflecting the overall soundness of institutional security

g.  Making recommendations concerning security enhancements, expenditures as measured by a review of the budget, and modifications made to meet immediate and long-term security needs

h.  Creating and ensuring that emergency plans are clear, concise, and current

i.  Reviewing and making recommendations concerning institutional post orders, policies, and procedures

j.  Managing and making recommendations to the Warden concerning staffing and overtime

k.  Planning and scheduling post assignments as measured by a review of post orders, staffing, and overtime

74. Defendant Doe had the duty to implement MRDCC's policies and procedures, as well as to oversee the safety and well-being of inmates, including Mr. Brown.

75. Defendants were deliberately indifferent and grossly negligent in respect of their non-delegable responsibility and obligation to protect Mr. Brown while he was in their care, control, and custody as an inmate at MRDCC.

76. Defendants knew of the substantial and excessive risk of serious harm to inmates, including Mr. Brown, due to understaffed units, inadequate officer-to-inmate rations, lack of sufficient, trained, and qualified personnel to monitor, supervise, control, and protect the inmates,

a mixture of pretrial detainees with convicted inmates, assaults by other inmates with weapons made from objects, specifically makeshift weapons left accessible to inmates, housing inmates charged or convicted with sex offenses with other inmates in the general population.

77. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd knew the substantial and excessive risk of serious harm to Mr. Brown due to prior attacks on him as a result of other inmates finding out his charges, as well as pleas by Mr. Brown and his mother, Ms. Johnson, for him to be separated from the general population.

78. Defendant Doe knew the substantial risk of serious harm to Mr. Brown when he released more than the allowable number of inmates out of their cells (especially in light of recent assaults and killings at the MRDCC facility) and did not supervise the inmates when released.

79. Defendants breached their duties by failing to take adequate steps to alleviate the conditions, with willful and wanton negligence and disregard for Mr. Brown's safety, which actually, proximately, and foreseeably allowed the assailants to attack Mr. Brown, injuring him severely and failing thereafter to render aid timely.

80. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd also breached their duties by allowing a pattern of conduct to continue, including but not limited to:

    a. Failing to maintain proper correctional officer-to-inmate ratios

    b. Failing to adequately staff the unit in which inmates were housed, including Mr. Brown

    c. Failing to provide sufficient, trained, and qualified personnel to monitor, supervise, control, and protect inmates

    d. Failing to develop and implement policies and procedures regarding the mixed housing of pretrial detainees with convicted inmates

e.  Failing to prevent inmates from making, obtaining, storing, and using makeshift weaponry

f.  Failing to develop and implement policies and procedures regarding housing of inmates charged or convicted with sex offenses

g.  Failing to separate Mr. Brown from other inmates or place him in protective custody after he suffered prior attacks and he and his mother expressed fear for his safety

81. Defendant Doe breached his duty by failing to adhere to standards and policies and promulgating a pattern of conduct problematic within MRDCC by releasing more inmates from their cells than allowed, failing to keep proper surveillance and supervision of the inmates released from their cells, and either not being present during the attack, paying no heed to the attack, failing to intervene or seek assistance from other officers during the attack, and/or failing to render immediate aid after the attack contrary to standards and policies.

82. As a direct and proximate result of Defendants' breach of duties, inmates within Mr. Brown's unit physically assaulted and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages, and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

WHEREFORE, Mr. Brown demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorney's fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT III - Negligence
### (Against all Defendants)

83. Mr. Brown adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

84.  Defendants had a duty to provide care, safekeeping, and protection and, *inter alia*, not create or maintain a dangerous condition that could harm persons such as Mr. Brown, who was under their control.

85. Defendants had a special duty to Mr. Brown because of the custodial relationship between Defendants and Mr. Brown and because Defendants put Mr. Brown in harm's way by placing him in a zone of danger.

86. At all relevant times, Defendants knew of the substantial and excessive risk of serious harm to inmates, including Mr. Brown, due to understaffed units, inadequate officer-to-inmate rations, lack of sufficient, trained, and qualified personnel to monitor, supervise, control and protect the inmates, a mixture of pretrial detainees with convicted inmates, assaults by other inmates with weapons made from objects, specifically makeshift weapons left accessible to inmates, housing inmates charged or convicted with sex offenses with other inmates in general population.

87. The Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd knew the substantial and excessive risk of serious harm to Mr. Brown due to prior attacks on him as a result of other inmates finding out his charges, as well as pleas by Mr. Brown and his mother, Ms. Johnson, for him to be separated from the general population.

88. Defendant Doe knew the substantial risk of serious harm to Mr. Brown when he released more than the allowable number of inmates out of their cells (especially in light of recent assaults and killings at the MRDCC facility) and did not supervise the inmates when released.

24

89. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd had a duty to act with reasonable care in the operation, control, safety, and security of MRDCC and the inmates housed therein, which includes but is not limited to:

a.  Overseeing the management of program and operational services such as security operations

b.  Developing policies and procedures in order to improve operations in a correctional institution

c.  Reviewing recommendations made by correctional classification personnel in order to approve or disapprove changes in security operations, job assignments, program participation, and disciplinary action

d.  Ensuring that the institution is in compliance with all regulations of the Maryland Commission on Correctional Standards

e.  Supervising uniformed correctional staff as measured by a review of completed annual efficiency ratings, institutional training records, and other documents verifying compliance with human resource requirements

f.  Maintaining the custody of inmates and the security of the institution as measured by a review of compliance audit reports, serious incident reports, and other documents reflecting the overall soundness of institutional security

g. Making recommendations concerning security enhancements, expenditures as measured by a review of the budget, and modifications made to meet immediate and long-term security needs

h. Creating and ensuring that emergency plans are clear, concise, and current

i. Reviewing and making recommendations concerning institutional post orders, policies, and procedures

j. Managing and making recommendations to the Warden concerning staffing and overtime

k. Planning and scheduling post assignments as measured by a review of post orders, staffing, and overtime

90. Defendant Doe had the duty to act with reasonable care in implementing MRDCC's policies and procedures, as well as overseeing the safety and well-being of inmates, including Mr. Brown.

91. Defendants breached their duties of reasonable care by failing to take adequate steps to alleviate the deplorable conditions at MRDCC, which allowed the assailants to attack Mr. Brown, injuring him severely and failing thereafter to render aid timely.

92. Defendants State of Maryland, Scruggs, Wilson, Burrell Boyd, and Y. Boyd also breached their duties to act with reasonable care by allowing a pattern of conduct to continue, including but not limited to:

a. Failing to maintain proper correctional officer-to-inmate ratios

b. Failing to adequately staff the unit in which inmates were housed, including Mr. Brown

c.  Failing to provide sufficient, trained, and qualified personnel to monitor, supervise, control, and protect inmates

d.  Failing to develop and implement policies and procedures regarding the mixed housing of pretrial detainees with convicted inmates

e.  Failing to prevent inmates from making, obtaining, storing, and using makeshift weaponry

f.  Failing to develop and implement policies and procedures regarding housing of inmates charged or convicted with sex offenses

g.  Failing to separate Mr. Brown from other inmates or place him in protective custody after he suffered prior attacks and he and his mother expressed fear for his safety

93. Defendant Doe breached his duty to act with reasonable care by failing to adhere to standards and policies and promulgating a pattern of conduct problematic within MRDCC by releasing more inmates from their cells than allowed, failing to keep proper surveillance and supervision of the inmates released from their cells, and by either not being present during the attack, paying no heed to the attack, failing to intervene or seek assistance from other officers during the attack, and/or failing to render immediate aid after the attack contrary to standards and policies.

94. As a direct and proximate result of the Defendants' breach of duties, inmates within Mr. Brown's unit physically assaulted and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

WHEREFORE, Mr. Brown demands judgment against Defendants in an amount to be

determined at trial, but in excess of $75,000.00 plus interest, costs and attorney's fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

### COUNT IV - Gross Negligence
### (Against all Defendants)

95. Mr. Brown adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

96. Defendants acted recklessly with gross negligence and/or malice when Mr. Brown, under their watch and care, was allowed to be assaulted and stabbed by inmates without proper supervision, resulting in injuries, including permanent loss of vision in his left eye.

97. Defendants acted recklessly with gross negligence and/or malice when Defendants failed to intervene and ensure the safety of inmates and Mr. Brown when they were on actual notice that:

    a.  MRDCC was overcrowded

    b.  MRDCC was understaffed

    c.  MRDCC contained a mix of pretrial detainees and convicted inmates, which led to an increase in inmate assaults, making it a dangerous facility

    d.  MRDCC inmates had makeshift weapons and used them

    e.  There was a recent attack on an MRDCC inmate by other inmates using makeshift weapons, resulting in his death

f.  Inmates charged with or convicted of sex offenses are at risk of being

assaulted or harmed

g.  Mr. Brown was already assaulted due to the nature of his charges

while detained

h.  Mr. Brown and his mother, Ms. Johnson, expressed fear for his safety

and requested that he be housed by himself in protective custody.

98. Defendant Doe acted recklessly with gross negligence and/or malice knowingly and intentionally released more inmates from their cells than allowed, did not keep watch, and supervise the inmates when released, to keep proper surveillance and supervision of the inmates released from their cells, was not present during the attack, paid no heed to it, and did not intervene or seek assistance from other officers while this was going on.

99. Defendant Doe also acted recklessly with gross negligence and/or malice when he knowingly and intentionally did not render immediate aid after the attack.

100. By knowing of the conditions of MRDCC and previous attacks on Mr. Brown and complaints by Mr. Brown and his mother and failing to intervene, properly supervise, or implement proper safety precautions, Defendants were acting with wanton and willful disregard of Mr. Brown's rights as if such rights did not exist.

101. In the alternative, Defendants acted with malice when they purposefully allowed the assault of Mr. Brown to occur.

102. Defendants demonstrated ill will and an evil and wrongful motive against Mr. Brown when they allowed inmates to assault him and stab him in the left eye.

103. By allowing inmates to assault Mr. Brown, Defendants demonstrated a purpose to deliberately, willfully, and unreasonably injure Mr. Brown.

104. As a direct and proximate result of the Defendants' actions, inmates within Mr. Brown's unit physically assaulted and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

WHEREFORE, Mr. Brown demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorney's fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

### COUNT VII - Negligent Supervision
**(Against Defendants State of Maryland, Suggs, Wilson, Burrell Boyd, and Y. Boyd)**

105. Mr. Brown adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

106. Defendants State of Maryland, Suggs, Wilson, Burrell Boyd, and Y. Boyd had a duty to use reasonable care to select employees who are competent and fit to perform the duties of an employee of MRDCC.

107. Individual officers and administrators herein were always employees of DSPCS and/or MRDCC relevant hereto.

108. Upon information and belief, individual officers, administrators, and other employees have previously committed violations such as those at issue here.

109. Defendants had constructive and/or actual knowledge of individual employee's and other officers' previous violations.

110. The prior transgressions of individual employees and other officers are such to put Defendants on notice that the individual employees are unfit for duty.

111. The prior transgressions of individual employees are such to give rise to a duty to properly supervise individual employees.

112. Despite having the duty and authority to properly supervise individual employees, Defendants negligently failed to properly supervise individual employees, including Officer Doe.

113. As a direct and proximate result of the negligent supervision of individual employees as described herein, individual employees were put in a position to commit the wrongs in this case.

114. Had Defendants exercised reasonable diligence and care, it would have been known that the individual employees were capable of inflicting this type of harm on Plaintiffs.

115. Defendants failed to use proper care when supervising individual employees.

116. Defendants failed to supervise individual employees in a matter sufficient to ensure that they would not engage in unlawful, unconstitutional, or tortious conduct.

117. Defendants knew or should have known that the supervision was inadequate to ensure that its individual employees do not engage in unlawful, unconstitutional, or tortious conduct.

118. This negligent supervision has led to a pattern or practice of unlawful, unconstitutional, and tortious conduct on the part of Defendants.

119. As a direct and proximate result of the Defendants' actions, inmates within Mr. Brown's unit physically assaulted and stabbed him in his left eye with a makeshift weapon, causing complete loss of vision in that eye, bodily injuries, great mental anguish, loss of work, wages and future earnings, emotional distress, loss of enjoyment of life, pain, and suffering.

WHEREFORE, Mr. Brown demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorney's fees, and punitive

damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## **JURY DEMAND**

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully submitted,

*/s/ Elizabeth Connell*

Elizabeth Connell, Esq. (Bar No.: 30263)
Connell Counsel, LLC
1031 S. Charles Street
Baltimore, Maryland 21230
443-333-9525
Elizabeth@connellcounsel.com
Attorney for Plaintiff