**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

KAREEM BROWN,
*Plaintiff*,

v.

STATE OF MARYLAND, *et al.*,
*Defendants*

Case No. 25-cv-0054-ABA

**MEMORANDUM OPINION**

In January 2022, Plaintiff Kareem Brown was stabbed in the eye by another inmate, rendering him blind in that eye, while in pre-trial detention at the Maryland Reception Diagnostic and Classification Center ("MRDCC"). Mr. Brown has sued the State of Maryland and the following Defendants in their individual and official capacities: Carolyn Scruggs, the Secretary of Public Safety and Correctional Services; Tyrell Wilson, Warden at MRDCC; Angelina Burrell Boyd, Assistant Warden at MRDCC; and Yevonicia Boyd, Chief of Security at MRDCC (together, "the Supervisor Defendants"); and Adenike Osunmakinwa and Darius Chaney, both Correctional Officers at MRDCC (together, "the Officer Defendants"). Mr. Brown brought claims alleging federal and state constitutional violations and various tort claims under Maryland state law. Defendants have moved to dismiss Mr. Brown's complaint. For the reasons explained below, the motion will be granted in part and denied in part.

## I. BACKGROUND[1]

On August 27, 2021, Mr. Brown was arrested and charged with, among other crimes, first degree rape, and was first held at Central Booking Intake Facility ("CBIF") in Baltimore City. ECF No. 37 ¶¶ 21–22. Mr. Brown alleges that, while he was at CBIF, "approximately six (6) to eight (8) inmates tried to steal his paperwork and assault Mr. Brown" and that "[a]n older, unknown inmate intervened . . . and informed Mr. Brown that the other inmates knew what Mr. Brown was detained for [and] that he was in danger." *Id.* ¶¶ 25–26. Mr. Brown was transferred to another unit, "placing him alone in a holding cell for his safety." *Id.* ¶ 27. After three days, Mr. Brown was told that he would be transferred to MRDCC, *id.* ¶ 28, but "Mr. Brown did not want to transfer to MRDCC due to safety concerns," *id.* ¶ 29. Mr. Brown alleges that "he repeatedly told staff he would prefer to remain by himself at CBIF." *Id.* Before his move, Mr. Brown "requested to be housed by himself as he was fearful of being attacked like he was previously at CBIF due to the nature of his charges." *Id.* ¶ 30. Mr. Brown alleges that he "asked to be housed by himself because he believed that MRDCC was a dangerous facility," and that he was "aware of [an] August 27, 2021 inmate stabbing that occurred at MRDCC." *Id.* Mr. Brown does not allege with whom he had these conversations.

After approximately two weeks at CBIF, Mr. Brown was transferred to MRDCC on September 9, 2021, by which time "the facility was in lockdown due to a situation at the facility culminating in the stabbing and killing of" another inmate. *Id.* ¶ 37. Although Mr. Brown's mother contacted employees at MRDCC to try to place Mr. Brown in either

---

[1] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

protective custody or administrative segregation, this request allegedly was "to no avail." *Id.* ¶ 38.

Then, sometime between October and November 2021, Mr. Brown was attacked by his cellmate, though the complaint does not identify any details or circumstances related to that attack. *Id.* ¶ 44.

After that attack, Mr. Brown was moved to another unit. *Id.* He requested to be housed by himself due to safety concerns, "but was told that MRDCC could not keep him separated unless he were in trouble, as punishment." *Id.* Mr. Brown alleges that he "kept reporting to MRDCC staff that he was not safe and was in trouble due to the nature of his charges, but his complaints went ignored." *Id.* ¶ 45. He further states that he "asked to file an inmate grievance form, but MRDCC employees would not provide him with the form to do so." *Id.* Again, Mr. Brown does not allege with whom he or his mother interacted.

Mr. Brown contends that when he first arrived at MRDCC, inmates could only leave their cell for thirty minutes, which would occur one cell at a time, and that each cell usually had two inmates. *Id.* ¶ 43. By November to December 2021, "MRDCC increased the number of inmates [who] were able to leave their cells to four (4) inmates at a time from two (2) cells." *Id.* ¶ 46.

Then, on January 8, 2022, either Officer Osunmakinwa or Chaney let Mr. Brown, his cell mate, and two other inmates out for recreation. *Id.* ¶ 47. Mr. Brown alleges that Officer Osunmakinwa or Chaney opened another three to four cells, allowing a total of ten to twelve inmates out of the cells and onto the tier. *Id.* ¶ 49. During this time, an inmate called out to Mr. Brown, and when Mr. Brown approached, the inmate "told Mr. Brown that he knew what Mr. Brown was locked up for." *Id.* ¶ 51. Another inmate then

"came up behind Mr. Brown and assaulted him[,]" and as Mr. Brown tried to defend himself, the first inmate "stabbed Mr. Brown in the left eye with a makeshift weapon." *Id.* Mr. Brown alleges that "during this assault, Defendant Osunmakinwa or Chaney was not on the same floor and did not intervene or call for assistance." *Id.* ¶ 52.

Mr. Brown alleges that he then "called out to Defendant Osunmakinwa or Chaney saying his eye was bleeding but, instead of immediately rendering aid to Mr. Brown or sending him to receive urgent medical care, Defendant Osunmakinwa or Chaney placed Mr. Brown back in his cell." *Id.* ¶ 53. Mr. Brown waited "at least twenty (20) minutes before Defendant Osunmakinwa or Chaney provided him with a pass to go to the medical unit." *Id.* Although Mr. Brown initially reported that he "slipped and fell in the shower out of fear of inmate retaliation . . . his medical records confirm that Mr. Brown informed personnel that he was attacked by an inmate." *Id.* n.10. Then, "[w]hen Mr. Brown arrived at the medical unit, they transported him to the University of Maryland Hospital, where he underwent emergency surgery and remained in the hospital for a few days." *Id.* ¶ 55. Mr. Brown was "rendered blind in one eye" by the incident. *Id.* ¶ 1.

Mr. Brown alleges that before this January 8, 2022 incident, "there had not been any recent inspections of the cells to determine whether inmates possessed contraband such as the weapon used by the other inmate to stab Mr. Brown in the eye." *Id.* ¶ 56. Mr. Brown states that "[a]fter speaking with the Maryland Attorney General's Office, there is no surveillance of the incident on January 8, 2022 due to either inoperational or malfunctioning cameras." *Id.* ¶ 59.

Mr. Brown alleges that Defendants knew or should have known of the following dangers:

a. MRDCC was overcrowded;

> b. MRDCC was understaffed;
> c. MRDCC contained a mix of pretrial detainees and convicted inmates, which led to an increase in inmate assaults making it a dangerous facility;
> d. MRDCC inmates had makeshift weapons and used them;
> e. There was a recent attack on an MRDCC inmate by other inmates using makeshift weapons, resulting in his death;
> f. Inmates charged with or convicted of sex offenses are at risk for being assaulted or harmed;
> g. Mr. Brown was already assaulted due to the nature of his charges while detained;
> h. Mr. Brown and his mother . . . expressed fear for his safety and requested that he be housed by himself, in protective custody;
> i. The cameras in the area were inoperable and not functioning; and
> j. MRDCC does not have adequate safety protocols to keep inmates safe.

*Id.* ¶ 60. The charges against Mr. Brown were later dismissed, and Mr. Brown was released from custody on July 6, 2022. *Id.* ¶ 21.

Mr. Brown's operative complaint in this case asserts the following claims: (1) Count I against all Defendants for failure to protect under 42 U.S.C. § 1983 in violation of the Fourth, Eighth, and Fourteenth Amendments, *id.* ¶¶ 72–88; (2) Count II against the State and the Supervisor Defendants for "municipal and supervisory liability (*Monell*)" under 42 U.S.C. § 1983, *id.* ¶¶ 89–93; (3) Count III against all Defendants for violating Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights for violating "Mr. Brown's rights to personal security and protection," *id.* ¶¶ 94–108; (4) Count IV against all Defendants for negligence, *id.* ¶¶ 109–115; (5) Count V against all Defendants for gross negligence, *id.* ¶¶ 116–120; and (6) Count VI against the State and the Supervisor Defendants for negligent supervision, *id.* ¶¶ 121–135. Mr. Brown is seeking damages and declaratory and injunctive relief, including "enjoining future

unlawful and unconstitutional misconduct of the same type." *See id.* at 24, 25, 29, 30, 31, and 33.[2]

The Defendants filed two motions to dismiss, asserting that this Court lacks subject matter jurisdiction and that Plaintiff has failed to state a claim on which relief can be granted. ECF Nos. 42 & 49. Mr. Brown filed responses to the motions. ECF Nos. 45 & 51.

## II. STANDARD OF REVIEW

### A. Lack of Subject Matter Jurisdiction

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). If the movant makes a facial challenge to the complaint, asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

But if the movant challenges the factual predicate of subject matter jurisdiction and contends that the jurisdictional allegations of the complaint are false, then the "court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary

[2] Page citations are to ECF pagination, which may differ from the page numbers used by the parties.

judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). "The burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010).

### B. Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King,* 825 F.3d at 212. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Eleventh Amendment Immunity

Defendants first argue that the claims against the State and the other Defendants in their official capacities are barred by the Eleventh Amendment. The Court agrees.

The Eleventh Amendment "limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002). "[W]henever [sovereign immunity] is properly invoked by a state or its agents, . . . that bar is absolute," *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1992), unless the state has waived it by, among other things, "mak[ing] a clear declaration that it intends to submit itself to [federal] jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999) (internal quotation marks omitted).

While Maryland has waived its immunity to tort claims "in a court of the State," Md. Code, State Gov't, § 12-104(a)(1), it has not "waive[d] any right or defense of the State or its units, officials, or employees in an action *in a court of the United States* or any other state, including any defense that is available under the 11th Amendment to the United States Constitution." *Id.* § 12-103(2) (emphasis added). Thus, Maryland has not waived its Eleventh Amendment immunity from suit in federal court. *See Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990) ("The waiver of sovereign immunity in the Maryland Tort Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.").

Mr. Brown argues that the State and the other Defendants in their official capacities are not immune from suit because in addition to damages, he also seeks injunctive relief. The *Ex Parte Young* doctrine provides that "the Eleventh Amendment

does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour,* 474 U.S. 64, 68 (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)). But, even if the Court were to assume that the *Ex Parte Young* exception applies, as Mr. Brown contends, *see* ECF No. 45–1 at 2, Mr. Brown lacks Article III standing to bring an action for declaratory or injunctive relief. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Here, Mr. Brown was released from custody in July 2022, *see* ECF No. 37 ¶ 58, and has not alleged that it is likely he will suffer future injury in custody or that he personally faces an actual or imminent threat of injury. Therefore, Mr. Brown lacks standing to seek prospective injunctive relief against the Defendants. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06 (1983) (holding that the plaintiff lacked standing to seek injunctive relief where he alleged that he had been previously injured by police officers but could not demonstrate likelihood of suffering future injury at the hands of officers).

Given that the State of Maryland has not waived immunity from federal court jurisdiction, this Court lacks subject matter jurisdiction to hear the claims against the State and the Defendants in their official capacities, and those claims will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). The Court will also strike Mr. Brown's requests for injunctive and declaratory relief from the amended complaint due to lack of standing.

### B. Immunity from the State Law Claims Under the Maryland Tort Claims Act

The Maryland Tort Claims Act ("MTCA") "provides a limited waiver of sovereign immunity and is the sole means by which the State of Maryland and its personnel may be sued in tort." *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (internal quotation marks omitted). Because Defendants are "State personnel" sued in the performance of their public duties, the Defendants are entitled to statutory immunity under the MTCA for any state law claims not excepted by the MTCA. The MTCA provides that State personnel have "the immunity from liability as described under § 5-522(b) of the Courts and Judicial Proceedings Article." Md. Code, State Gov't § 12-105. In turn, Section 5-522(b) provides that State personnel are "immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Md. Code, Cts. & Jud. Proc. § 5-522(b). Thus, the MTCA "cover[s] intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence." *Lee v. Cline*, 384 Md. 245, 256 (2004). The Court must therefore decide whether any of Mr. Brown's state constitutional or tort claims alleges sufficient malice or gross negligence such that the Defendants are not immune from them in their individual capacities under the MTCA.

Malice in this context "refers to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Id.* at 268 (cleaned up). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any

effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)). "[A] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* (quoting *Liscombe*, 303 Md. at 635).[3] And because Maryland courts have held that "immunity under the Maryland Tort Claims Act . . . encompasses constitutional torts and intentional torts," the immunity analysis applies to Counts III through VI of the amended complaint. *Lee,* 384 Md. at 266.

For these reasons, the claims of negligence in Count IV and negligent supervision in Count VI will be dismissed against all Defendants as those counts do not require malice or gross negligence. Below, the Court will discuss the allegations of malice and gross negligence in connection with Mr. Brown's claim of state constitutional violations and claim of gross negligence (Counts III & V).

**1. Malice**

"To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Manders v. Brown*, 101 Md. App. 191, 216 (1994) (quoting *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984)). With respect to the Officer Defendants, Mr. Brown alleges that one of these Defendants allowed a total of ten to twelve inmates out of their cells and onto the tier with only one correctional officer to supervise, instead of following facility policy and

---

[3] Although Plaintiff asserts that a case entitled "*Buford v. Hollands*" provides that "a defendant acts with gross negligence when he 'acts or fails to act' in the face of a 'known, serious risk' of harm to the plaintiff–a standard that is functionally equivalent to the standard for 'deliberate indifference,'" *see* ECF No. 45-1 at 7, the Court is unable to find this case at all, or this quote in any case.

only allowing three to four inmates out at a time. ECF No. 37 ¶ 49. Mr. Brown also alleges that Officer Defendants failed to call for medical assistance or immediately send Mr. Brown for medical care after seeing his bleeding eye. *Id.* ¶ 53. These facts, even taking all reasonable inferences in favor of the Plaintiff, do not plausibly allege "ill-will" or "evil or wrongful motive," and thus do not meet the malice standard.

Regarding the Supervisor Defendants, Mr. Brown does not allege any non-conclusory facts supporting that they personally knew of the threats made against Mr. Brown or even knew of Mr. Brown at all. Instead, he plausibly alleges, at best, that they knew MRDCC was overcrowded and understaffed and combined pretrial detainees and convicted inmates, and that there had been incidents of violence recently. ECF No. 37 ¶¶ 34–37, 60. Again, these allegations do not plausibly allege that the Supervisor Defendants harbored ill will specifically towards Mr. Brown.

### 2. Gross Negligence

In contrast, the Court concludes that, taking all reasonable inferences in Mr. Brown's favor, he has adequately alleged that the Officer Defendants acted with gross negligence because he plausibly alleges that they acted with "reckless disregard of the consequences as affecting the life or property or another," *Barbre*, 402 Md. at 187 (quoting *Liscombe*, 303 Md. at 635), by alleging that they ignored his serious medical need (as will be discussed below). Thus, the Court will not dismiss Count V for gross negligence against the Officer Defendants and will discuss Count III, alleging state constitution claims, for which the Officer Defendants could be responsible if their actions were grossly negligent, as well as Count I under § 1983 below in connection with the Officer Defendants.

Mr. Brown's non-conclusory allegations regarding the Supervisor Defendants, however, do not rise to the level of gross negligence.[4] At most they allege mere negligence. The allegations in the amended complaint described above do not allege that the Supervisor Defendants "inflict[ed] injury intentionally or [were] so utterly indifferent to the rights of others that [they] act[ed] as if such rights did not exist." *Id.* (quoting *Liscombe*, 303 Md. at 635). Therefore, Counts III and V (the state constitutional claims and the gross negligence claims) will be dismissed against the Supervisor Defendants based on immunity under the MTCA and, below, the Court will only discuss Count I (alleging § 1983 supervisory liability) and Count II (alleging § 1983 *Monell* liability) in relation to the Supervisor Defendants.

### C. Counts I & III: Failure to Protect under Federal and State Law

In Count I, Mr. Brown alleges that "Defendants deprived Mr. Brown of his Constitutional rights under the Fourth, Eighth, and Fourteenth Amendments." ECF No. 37 ¶ 76. Given that Mr. Brown alleges no facts that describe any search or seizure by state actors, the Fourth Amendment claims will be dismissed. And, because Mr. Brown was a "pretrial detainee and not a convicted prisoner" at the time of the allegations, his "claim is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment." *Martin v.*

---

[4] Mr. Brown argues that "[t]he issue of gross negligence is generally one for the jury" and cites "*Smith v. Danielczyk*" as the origin of this quotation. This quotation does not appear in *Smith*, but it is a correct statement of the law. *See Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011) ("Whether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury"). But here, no reasonable fact finder could conclude that the Supervisor Defendants were grossly negligent based on the allegations in the amended complaint. Thus, it is appropriate to dismiss these claims at this time.

*Gentile,* 849 F.2d 863, 870 (4th Cir. 1988). Therefore, Mr. Brown's Eighth Amendment claim will also be dismissed. The Court will only analyze Mr. Brown's § 1983 claims based on alleged violations of the Fourteenth Amendment.

Likewise, Mr. Brown alleges violations of Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights in Count III. ECF No. 37 ¶¶ 95–96. "Art. 26 is in pari materia with the Fourth Amendment." *Gahan v. State,* 290 Md. 310, 319 (1981). Because the Fourth Amendment claim will be dismissed, the Court will also dismiss the Article 26 claim. And Articles 16 and 25 are coextensive with the Eighth Amendment. *See Evans v. State,* 396 Md. 256, 327 (2006). Thus, the claims under Articles 16 and 25 will also be dismissed for the same reasons the Court is dismissing the Eighth Amendment claims. Finally, "interpretations of the Fourteenth Amendment provided by the United States Supreme Court serve as persuasive authority for Article 24." *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 77 (2001); *Evans*, 396 Md. at 327 (holding that Article 24 should be interpreted "*in pari materia* with [its] Federal counterpart[]").[5] For that reason, the Court will discuss Counts I and III together when discussing the Officer Defendants. Regarding the Supervisor Defendants, the Court will only discuss Count I, because it has already concluded that Count III, the state constitutional claims, must be dismissed against those Defendants due to statutory immunity.

---

[5] Article 19 provides "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land." Md. Const. Decl. of Rts. art. 19. The basis for Mr. Brown's Article 19 claim is not clear, but it would appear to also be coextensive with the Fourteenth Amendment due process claim.

### 1. Counts I and III Against the Officer Defendants

"[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Attached to this right are certain duties imposed on prison officials, such as a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Likewise, "[t]he Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

Pretrial detainees alleging Fourteenth Amendment violations do not have to show that the defendant "had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk" of associated harm; "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2023)). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer,* 511 U.S. at 836). But "it is . . . not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12. Instead, "the pretrial detainee must show that the prison official 'exposed [the plaintiff] to an objectively substantial risk of serious harm[]' that 'a reasonable official in [his] position would have

appreciated.'" *Gilliam v. Dep't of Pub. Safety & Corr. Servs.*, Case No. 23-cv-1047-MJM, 2024 WL 5186706, at *11 (D. Md. Dec. 20, 2024) (quoting *Carmona v. Martin*, Case No. 23-6930, 2024 WL 4490695, at *2 (4th Cir. Oct. 15, 2024)).

Mr. Brown pursues two lines of reasoning regarding the alleged due process violations: (1) that the Officer Defendants failed to protect him from a substantial risk of harm by other inmates due to the nature of the charges against him, and (2) that the Officer Defendants were deliberately indifferent to his medical needs after he was attacked and presented to the Officer Defendants with a bleeding eye.

**a. Risk of Harm from Other Inmates**

With respect to the first allegation, Mr. Brown argues that he was at a heightened risk of harm due to the nature of his charges and in light of an incident where other inmates at CDIF attempted to assault him after learning about the nature of his charges. ECF No. 37 ¶¶ 25–26. He also alleges that he and his mother requested that he be housed by himself due to safety concerns and that his cellmate at MRDCC also attacked him. *See id.* ¶¶ 29, 30, 38, 44, 45; *see also* ECF No. 45-1 at 9–10 (describing the allegations Mr. Brown contends show knowledge of the danger). But Mr. Brown does not describe to whom he made these complaints or documented the attacks. Mr. Brown fails to plausibly allege, outside of conclusory allegations, that the Officer Defendants knew about any of the prior attacks or requests that he made, and has failed to therefore allege that any "reasonable official in [their] position would have appreciated" the danger to Mr. Brown. *Carmona*, 2024 WL 4490695, at *2; *see Rice v. Adams,* 172 F.4th 428, 433 (4th Cir. 2026) (holding that plaintiff failed to state a Fourteenth Amendment claim where his complaint failed to identify how or even whether any particular officer should have known about plaintiff's medical condition). Instead, at best, the amended

complaint alleges that the Officer Defendants had general knowledge that the prison was overcrowded and lacked certain safeguards. Such knowledge does not show an "unjustifiably high risk of harm" to Mr. Brown specifically "that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (quoting *Farmer*, 511 U.S. at 836). For this reason, Mr. Brown's first argument under this claim cannot proceed.[6]

**b. Deliberate Indifference to a Medical Need**

Mr. Brown's allegations of deliberate indifference to his eye injury are another matter, however. Mr. Brown alleges that after being stabbed in the left eye with a makeshift weapon, he "called out to Defendant Osunmakinwa or Chaney[7] saying that his eye was bleeding but, instead of immediately rendering aid to Mr. Brown or sending him to receive urgent medical care, Defendant Osunmakinwa or Chaney placed Mr. Brown back in his cell" for at least twenty minutes until he was provided with a pass to the medical unit. ECF No. 37 ¶¶ 51–53. To state a claim for deliberate indifference to a serious medical need under the Fourteenth Amendment, a pretrial detainee must plead the following:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to

[6] Mr. Brown includes only an abbreviated citation to one allegedly supportive case, "*Brown*" in which he contends that the court found that "a substantial risk of harm was obvious where the plaintiff was a known sex offender and officials were aware of general prison hostility toward such offenders." ECF No. 45-1 at 10. At a minimum, the citation is incorrect. The Westlaw citation provided by Mr. Brown is for a "RIA State and Local Tax Update," not a case. And without additional information, the Court has no reasonable way to divine what case Mr. Brown was attempting to reference (if one exists).

[7] Throughout the complaint, Mr. Brown styles the allegations as regarding "Defendants Osunmakinwa *or* Chaney." *See* ECF No. 37 ¶¶ 47–49, 52–54. Mr. Brown will ultimately have to prove which officer engaged in what actions.

> appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and that (b) that the defendants action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). Drawing all reasonable inferences in favor of Mr. Brown, allegations of a bleeding eye, regardless of the cause, satisfies the first element. *Id.*; *see Koehler v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (holding that visual impairments such as double vision and the loss of depth perception constitute a serious medical need).

Next, Mr. Brown alleges that instead of sending Mr. Brown to receive medical care, the Officer Defendants sent him back to his cell for twenty minutes. ECF No. 37 ¶ 53. Accepting as true the allegations in Mr. Brown's complaint and drawing all reasonable inferences in his favor, the Court concludes that failing to call for or send a person who has a bleeding eye to receive immediate medical care plausibly alleges a "reckless action" regarding an injury the Officer Defendants "should have known" about and that their inaction "posed an unjustifiably high risk of harm" to Mr. Brown. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (concluding that deliberate indifference to serious medical needs of prisoners can be manifested by prison guards "denying or

delaying access to medical care[.]").[8] At this early stage of the case, Mr. Brown has plausibly stated a claim for a Fourteenth Amendment violation against the Officer Defendants based on allegations of deliberate indifference to a serious medical need.

The Court notes that ultimately, to establish this claim based on a delay in medical care, Mr. Brown will have to prove, along with the other elements of his claim, that "'the delay *result[ed]* in some substantial harm" to him "such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

### c. Qualified Immunity

The Officer Defendants contend that they are entitled to qualified immunity from, among other things, the due process claims in Count I. ECF No. 42-1 at 11–14. The Court need only discuss qualified immunity in connection with the allegations of

[8] Although Plaintiff cites "*Scinto v. Stansberry*" at ECF No. 45-1 at 6 to support the proposition that a deliberate delay in providing medical care states a plausible claim for deliberate indifference, the quotation that Plaintiff cites, "even brief, unexplained delays in treatment can constitute deliberate indifference," does not exist in that case. The court did find that quote in a Seventh Circuit case, however: *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015)). In *Scinto v. Stansberry*, the court reversed a grant of summary judgment after finding in part that there were genuine disputes of material fact regarding whether failure to provide medical attention for two days after an incident was a serious deprivation of medical attention. 841 F.3d 219, 231–32 (4th Cir. 2016). Likewise, Mr. Brown cites "*Formica v. Aylor*" for the proposition that "that even a 'short delay' in providing care for an obvious, serious injury may support a deliberate indifference claim." ECF No. 45-1 at 6. The word "short" does not appear in that opinion at all. In fact, *Formica v. Aylor* involved a delay in treatment of about a year. 739 Fed. App'x 756–57 (4th Cir. 2018).

deliberate indifference to a medical need because that is the only claim in Count I that is not being dismissed.

The Officer Defendants are entitled to qualified immunity from the federal constitutional claims unless Mr. Brown has alleged that their conduct violated a constitutional right that was clearly established when the alleged violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A dismissal of a complaint based on qualified immunity "is appropriate when the face of the complaint clearly reveals the existence of a meritorious defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178–81 (4th Cir. 1996)). But here, Mr. Brown has sufficiently alleged facts that, if true, show a violation of a constitutional right that was clearly established at the time of the incident, therefore overcoming qualified immunity based on the pleadings and for the purposes of this motion to dismiss only. *Pearson*, 555 U.S. at 232. "A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976," *Scinto*, 841 F.3d at 236, and this right has been extended to pre-trial detainees for decades as well. *See City of Revere,* 463 U.S. at 243–44; *Belcher*, 898 F.2d at 34. At the time of the incident in 2022, it was well-established that pre-trial detainees had a right to adequate medical care and freedom from deliberate indifference to their medical needs, which would include prompt medical care for a bleeding eye. Mr. Brown has sufficiently alleged facts to state a claim for a violation of this right. For these reasons, Defendants' motion to dismiss Count I as to the Office Defendants in their individual capacities will be denied.

### 2. Count I against the Supervisor Defendants

Count I also alleges a § 1983 claim against the Supervisor Defendants. But there is no *respondeat superior* liability under § 1983 and, instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisor can be held liable in an individual capacity in connection with subordinates' actions when (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Except for conclusory statements, *see* ECF No. 37 ¶ 60, the amended complaint does not allege that the Supervisor Defendants had any actual knowledge regarding the alleged heightened danger to Mr. Brown. At best, the amended complaint attempts to establish constructive knowledge of the danger to Mr. Brown by stating that there had been a recent prior fatal stabbing at MRDCC, that the facility was overcrowded and understaffed, and inmates were known to have makeshift weapons. *Id.* ¶¶ 36, 60. Mr. Brown also alleges, without support that "[i]nmates charged with or convicted of sex offenses are at risk for being assaulted or harmed." *Id.* ¶ 60(f). The Court concludes that these allegations are insufficient to allege that the Supervisor Defendants had constructive knowledge of the risk that Mr. Brown would be assaulted because of the

nature of the charges against him. Mr. Brown alleges only one other stabbing occurred shortly before he arrived at the facility and he does not allege that it was related to the charges against the victim. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse"). And his general statement that inmates charged with sex crimes are "at risk" in prison is a bald conclusion that is insufficient to save the claim. *Iqbal*, 556 U.S. at 678.

The allegations in the amended complaint are a far cry from cases such as *Slakan v. Porter*, where the court found supervisory liability in the face of substantial evidence of actual knowledge of abusive use of water hosing against prisoners as well as additional constructive knowledge in light of a highly publicized incident in which an inmate was hosed for 25 to 30 minutes, a commission report recommending tighter controls on the use of water hoses, the fact that "seven cell-confined inmates were water hosed at Central Prison in the months immediately preceding the Slakan attack," and testimony from a guard that "he was involved in at least six incidents of hosings . . . without ever receiving a reprimand." 737 F.2d 368, 375 (4th Cir. 1984).

The Court will dismiss Count I against the Supervisor Defendants.

### D. *Monell* Municipal Liability (Count II)

Mr. Brown alleges that the State and the Supervisor Defendants are subject to municipal liability pursuant to 42 U.S.C. § 1983 under the *Monell* standard. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities can "be held liable for constitutional violations committed by their employees where the municipality is itself responsible for causing the constitutional deprivation" due to the municipality's established policy or custom. *Jordan by Jordan*

*v. Jackson*, 15 F.3d 333, 337–38 (4th Cir. 1994). But Mr. Brown's *Monell* claim is not asserted against a municipality; he has sued the State (which is immune) and individual supervisors. For these reasons, Defendants are not subject to *Monell* liability under Count II and this claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is granted in part and denied in part. All claims against all Defendants in their official capacities will be dismissed. All claims against the Supervisor Defendants in their individual capacities will be dismissed. All claims against the Officer Defendants in their individual capacities, except for Count I (alleging violations of the Fourteenth Amendment), Count III (alleging violations of Article 24 of the Maryland Constitution), and Count V (alleging gross negligence), will be dismissed against those Defendants. And, Mr. Brown's requests for injunctive and declaratory relief will be stricken from the amended complaint.

A separate order follows.

Date: August 26, 2026

/s/
Adam B. Abelson
United States District Judge